**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Magistrate No.: 19-MJ-162 (RMM)** |
| | : | |
| **JOSEPH SMITH** | : | |
| | : | **Detention Hearing: June 24, 2019** |
| Defendant. | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF**
**PRETRIAL DETENTION OF DEFENDANT JOSEPH SMITH**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, submits this memorandum in support of its request that defendant Joseph Smith be detained pending the trial of this matter pursuant to 18 U.S.C. § 3142(f)(1)(A), because the offense involved a crime of violence and a crime against a minor victim and because there is no condition or combination of conditions that will reasonably assure the safety of any person and the community. The defendant has been charged by Criminal Complaint in the District of Columbia with one count of Production of Child Pornography, in violation of Title 18 United States Code Section 2251(a), one count of Possession of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(4)(B), one count of Enticing a Minor, in violation of Title 18 United States Code Section 2422(b), and one count of First Degree Child Sexual Abuse with Aggravating Circumstances, in violation of District of Columba Code Sections 3008 and 3020(a)(2). An analysis of the factors set forth in 18 U.S.C. § 3142 below leads to the conclusion that detention is appropriate.

## FACTUAL BACKGROUND

Between in or about May of 2016 and April of 2017, the defendant, Joseph Smith (herein "SMITH"), engaged in ongoing, repeated sexual abuse of his step-daughter, A.S., with a date of birth of June 13, 2003. At the time the sexual abuse began, A.S. was twelve years old. During the same period, SMITH sent sexually explicit text messages to A.S. enticing and coercing her to engage in the conduct that constituted the sexual abuse. In addition, on at least one occasion, SMITH used A.S. to produce a sexually explicit depiction of A.S.'s genitalia by photographing her using his cellular telephone. On multiple occasions during the course of the abuse, SMITH also photographed A.S. in the nude, often surreptitiously, and instructed A.S. to take sexually explicit images of herself to provide to SMITH. During the period of abuse, A.S. resided in the same home with SMITH, her mother, and her younger sister, who is approximately five years younger than A.S. SMITH's home was located at 1301 C Street S.E., Apartment 32, in Washington, D.C. (herein "the residence").

A.S. reported the abuse to law enforcement on April 19, 2017. That day, at approximately 5:30 pm., A.S., her mother (herein "Witness 1"), and A.S.'s younger sister (herein "Witness 2") went to the First District substation of the Metropolitan Police Department and reported that SMITH had been forcing A.S. to insert his penis in her mouth for approximately one year. A.S. also reported that SMITH had been performing oral sex on her. The sexual abuse began in May of 2016, when A.S. was twelve years old. SMITH was residing in his residence with A.S., Witness 1, and Witness 2. However, Witness 1, along with A.S and Witness 2, left the residence as a result of an unrelated domestic dispute between Witness 1 and SMITH. The officer who took the report notified the Youth and Family Services Division ("YFSD") of the Metropolitan Police Department so that A.S. could be interviewed in more detail.

A detective with YFSD interviewed Witness 1, who stated that after a domestic dispute with SMITH, she left the residence with A.S. and Witness 2. Witness 1 stated that when she contemplated returning to the residence, A.S. objected and disclosed to a friend that SMITH had forced her to suck his penis and would put his mouth on her vagina. The friend told her own mother, who told Witness 1 about the disclosure, who then spoke with A.S. about the disclosure. According to Witness 1, A.S. disclosed that SMITH told A.S. that on her 14th birthday, she was going to "get dick" in the vagina and anus. A.S. told Witness 1 that she had not earlier disclosed SMITH's abuse out of fear.

That evening, A.S. was forensically interviewed at the Children's Advocacy Center ("CAC"). During the interview, A.S. disclosed that on Friday April 14, 2017, Witness 1 and SMITH were involved in a domestic violence incident. As a result of the incident, Witness 1 left the residence with her two children, A.S. and Witness 2. On April 18, 2017, when Witness 1 told A.S. that they would be returning home to the residence, A.S. became upset and disclosed, first to a friend and ultimately to Witness 1, that SMITH had forced her to insert his penis into her mouth starting in May of 2016, when she was 12 years old. A.S disclosed that this abuse continued after she turned 13 years old on June 13, 2016.

In describing the abuse, A.S. disclosed that SMITH approached her from behind and told her "put your pretty mouth on this." SMITH then forced his penis in and out of her mouth as she resisted and cried.

A.S. said that initially, SMITH would force his penis into her mouth when Witness 1 was in the hospital. Witness 1 was hospitalized regularly, because, according to A.S., she had complications from severe asthma. After some time, SMITH would have A.S. perform oral sex on him when Witness 1 was in the residence; however, on those occasions, SMITH would make sure

that Witness 1 was asleep and unable to hear anything. A.S. said that Witness 1 would be asleep in the bedroom, while A.S. was in her bed located in the living room area of SMITH's residence. Witness 2 would sleep in the bedroom with Witness 1, which allowed SMITH access to A.S. when alone in the living room.

A.S. disclosed that on one occasion, while SMITH was forcing her to suck his penis, SMITH became very upset and cursed at her repeatedly. As retaliation, A.S. bit him on the middle of his penis. SMITH then slapped A.S. and continued to curse at her as he forced his penis back into her mouth while she cried.

A.S. disclosed that "this year," which she clarified in a later interview that she meant to encompass the 2016-17 school year, SMITH began "connecting his mouth to my vagina." She disclosed that she did not know what to do or how to feel. A.S. stated that SMITH made Witness 2 go to sleep in the bedroom with Witness 1, and made sure they were asleep. She recalls being awakened by SMITH and him telling her he was going to "eat" her vagina.

When asked about the worst moment during the course of the abuse, A.S. described an occasion on which SMITH "connected his mouth" to her vagina as follows: "he kept biting my vagina and it hurt . . . . I thought I was bleeding but the next day I checked and I didn't bleed but it hurt." A.S. disclosed that the last time SMITH sexually abused her was in March of 2017. She stated that Witness 1 walked in the room while the abuse was occurring, and SMITH jumped up in the bed as if he was doing something else. A.S. adjusted herself and stated she was hot to explain why she did not have any clothing on her lower body. A.S. said that she did not say anything to Witness 1 at that time out of fear of getting in trouble.

A.S. said that at night, after sexually abusing her, SMITH would send text messages to her cellular phone which would contain long paragraphs about the "next schedule." She described the

4

"next schedule" as SMITH's expectations of their next sexual encounter. In response to his texts, A.S. said that she would text SMITH that she was not going to do what he requested. A.S. said that in one of the texts SMITH sent her, he told her that for her 14th birthday he was going to put his penis in her vagina and her anus. A.S. referred to the penetration of her vagina and anus as "rape." A.S. stated that in addition to deleting the messages from his own phone, SMITH would also take her phone from her and delete the text messages that he had sent her. When she was interviewed at the CAC, A.S. said that her phone, a rose gold iPhone, was in SMITH's possession.

A.S. also said that SMITH would take pictures of her when she was in the bathtub in SMITH's residence in D.C. Specifically SMITH would open the bathroom door while she was bathing, and would take photographs of A.S.'s naked body with his cellular telephone, which she described as an iPhone 6 S+. In addition, SMITH had on a number of occasions instructed A.S. to take nude pictures of her to send to him, and A.S. said she would sometimes send them.

On April 21, 2017, pursuant to a warrant issued by the Superior Court of the District of Columbia, a search was conducted at SMITH's residence located at 1301 C Street S.E., Apartment 32, in Washington, D.C. Law enforcement seized multiple electronic devices belonging to SMITH, including a Lenovo PC computer and a black Motorola cellular phone. Between April 27 and May 10, 2017, a preliminary forensic examination of the seized devices was conducted by the Department of Forensic Sciences Digital Evidence Unit (herein "DFS").[1] The Lenovo PC computer revealed that it was associated with a username of "joseph" and a full name "Joseph Smith." Numerous recent internet searches had been conducted on the computer for pornographic material.

---

[1] In addition, A.S.'s iPhone was seized from SMITH's residence. A.S. provided the passcode to the device. DFS attempted to access the iPhone but for unknown reasons, did not use the passcode provided by A.S., and therefore the iPhone was not forensically analyzed at that time.

The search terms revealed by the forensic review included the following:

- "free black anal sex step daddy n step daughter"
- "free black step father n step daughter anal sex"[2]
- "free black teen anal sex"
- "free black step father nstep daughter"
- "free black anal sex vido"
- "can anal make you pregnant"
- "how many people get pregnant from anal sex"

DFS also conducted a rudimentary, preliminary extraction of the black Motorola cellular phone that revealed numerous text messaging exchanges between SMITH and A.S. during the relevant time frame, though none were of the character described by A.S. in the forensic interview. At the time of the search, the DFS did not have software available to conduct a more complete physical extraction of the device, and accordingly could not retrieve deleted messages and data from SMITH's Motorola phone.

On May 10, 2019, SMITH was arrested at the First District Police Substation at 500 E Street, S.E. and charged in the Superior Court for the District of Columbia with one count of First Degree Sexual Abuse and four counts of Misdemeanor Sexual Abuse. At the time of his arrest, SMITH had on his person an Apple iPhone 6S+ (herein "SMITH's iPhone"), which police officers seized incident to arrest and logged as evidence. A search warrant was obtained out of the Superior Court for the District of Columbia for the SMITH's iPhone, and a preliminary forensic review of that device was completed by DFS. That preliminary forensic review of SMITH's iPhone revealed that he had sent several text messages to his current girlfriend regarding his efforts to evade the police, who had visited SMITH's residence on more than one occasion in May 2019 to attempt to arrest him on a warrant.

---

[2] All text abbreviations and typographical errors in quoted language are original.

Given the limitations of DFS's first preliminary forensic examination of SMITH's Motorola cellular phone, in May 2019, DFS conducted a second, more complete forensic examination of SMITH's Motorola phone pursuant to a new warrant obtained from the Superior Court for the District of Columbia.

Among the evidence recovered were two images depicting A.S. The first was an image depicting A.S. holding up her shirt and displaying her breasts toward the camera. The image was taken in the bathroom at SMITH's residence, in which A.S. had resided with SMITH. A second image depicted A.S.'s vaginal and anal area, and was taken from a vantage point behind A.S. The background depicted the same shower curtain and surroundings as the first image. At a follow-up interview of A.S. conducted on June 11, 2019, A.S. identified herself in the image depicting her genitalia and stated that SMITH had taken that image of her with his cellular phone. Specifically, A.S. stated that SMITH had entered the bathroom of their shared residence, instructed her to bend over, and pushed her on her back with his hand to make her do so. A.S. said that while she stood bent over with her hands on the toilet, SMITH took the photograph depicting her vaginal and anal area. A.S. also identified herself in the image displaying her breasts and stated that SMITH entered the bathroom while she was in there, handed her her own cellular phone, and then threatened her to coerce her to take an image of her breasts and send it to him, which she did. A.S. said that SMITH repeatedly asked her to take pictures of her genitalia to send to him, but she refused.

DFS also recovered from SMITH's Motorola phone evidence of numerous internet searches for and evidence of viewing adult pornography, specifically including pornography depicting anal sex.

DFS also conducted a more complete forensic extraction of A.S.'s iPhone in May 2019, using her passcode to access the phone's contents. DFS recovered from the iPhone numerous text

messaging exchanges between A.S. and SMITH that had been deleted, but were nonetheless forensically extracted.

On April 10, 2017, a little more than one week before A.S. disclosed the abuse, A.S. and SMITH engaged in the following exchange, which was recovered from the deleted space in A.S.'s iPhone:

SMITH:      I want to see ur tits n lick them

A.S.:         What I do

SMITH:      U never try to make me cum

A.S.:          I do but tonight my tooth hurts sorry

A.S.:          lk it feel uncomfortable

SMITH:      It's something all the time but that's okay I'm going to start putting my dick into ur beautiful ass

A.S.:          No

SMITH:      Yes unless u going to gave me some pzzy

A.S.:          U have to wait this shit is not easy to open unless I become a whore and it look like that's my only solution to this

SMITH:      U won't be a whore just minds

A.S.          So I'm a hoe period I'm cool with that but this take time I'm not rushing nothing but I will if you need me that much

SMITH:      I need u that much

A.S.          Is that a question

SMITH:      No I need you that much I'm trying to wait longer

A.S.          Cuz me I'll just suck ur dick instead of giving up my virginity to you

\* \* \*

SMITH:   U need to suck my dk tomorrow n show me how much u love [heart emoji] me."

SMITH:   u much open up ur ass starting Tomorrow cuz I'm going to start fucking u in ur ass next week promise

SMITH:   take your panties off

In addition to this exchange, other messages, dated between November 2016 and March 2017, were also recovered from the deleted space of A.S.'s phone. The extraction report identifies A.S. as the recipient of those messages, but does not identify the sender. In her June 11, 2019, interview, A.S. subsequently identified those messages, excerpts of which appear below, as having been sent by SMITH:[3]

SMITH:   Don't let me find out that u r lying bout ur period cause it's never on this long n I know when u stopped using the pad (December 27, 2016)

SMITH:   I want my dk sucked tonight n I will give u some money tomorrow (January 4, 2017)

SMITH:   When [Witness 2] go into the bath get ready to suck some dk (January 23, 2017)

SMITH:   When u start letting me fuck that ass u can have anything u want n you can't tell anyone (January 23, 2017)

SMITH:   And I can take it slower as long as its mind (January 23, 2017)

SMITH:   When I get from the back I want to eat ur pussy tonight (January 23, 2017)

SMITH:   Can you suck a little for me (March 16, 2017)

SMITH:   When mommy takes [Witness 2] to the bus can I eat (March 23, 2017)

---

[3] A.S.'s responses to these messages, if any, were not recovered.

Regarding SMITH's reference to A.S.'s menstrual cycle, a search warrant response received from Apple in May 2019 revealed that SMITH was apparently using the "Notes" app in his iCloud account to track the start and end dates of someone's menstrual cycle. Although A.S. said in the June 11, 2019, interview that she sometimes used an app to track her own period, she denied ever tracking that information in a "note" on her phone.[4]

During the same interview on June 11, 2019, during which A.S. identified herself as the individual depicted in the image of child pornography forensically extracted from SMITH's phone, A.S. disclosed the same information as she had in her CAC forensic interview in April 2017. A.S. was also asked additional questions not addressed during her CAC interview. In response to this lengthier, more detailed questioning, A.S. revealed additional details about the sexual abuse she suffered. For example, A.S. recounted an additional specific instance of sexual abuse by SMITH in which he drove her in a rented U-Haul van to a pet store in Washington, D.C., and purchased three fishes for A.S. A.S. recalled that after SMITH bought her the pets, he drove the van to a dark vacant area in the vicinity of Banneker High School, parked the van, pulled A.S. into the back, pushed her to her knees, and forced her to suck his penis.

A.S. also provided additional information about the facts she had previously disclosed. For example, she identified the hospital in Washington, D.C., to which her mother was taken during the occasions on which SMITH would sexually abuse her. She also elaborated on the kinds of photos that SMITH would take of her in the shower, when she was not aware that he was in the bathroom until she saw his hand and phone reach around the shower curtain.

---

[4] A.S. did indicate that because her iCloud account was linked in some way with SMITH's account, certain information from his phone appeared on her phone, including, for example, several pornography related searches. A.S. denied that she ever used her phone to search for any pornography or sex-related inquiries.

A.S. also stated that on at least one occasion, SMITH forced her to watch a video of pornography on his computer.[5] The video he made her watch depicted vaginal sex, and A.S. recalled it to be titled something akin to "stepdaughter and stepfather sex." SMITH stopped A.S. when she tried to leave the room because she did not want to watch the video, and he told her that it was normal for stepfathers to have sex with their stepdaughters.

SMITH made his initial appearance on June 20, 2019, at which time the United States requested that SMITH be held pending trial pursuant to 18 U.S.C. § 3142(f)(1)(A). The United States has been informed by counsel for SMITH that a preliminary hearing will go forward as scheduled on June 24. 2019. The government submits this memorandum in advance of that hearing and in support of its request for detention.

## APPLICABLE LEGAL STANDARD

The Bail Reform Act permits a judicial officer to hold an individual without bond pending trial if the officer finds clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e). Pursuant to 18 U.S.C. § 3142(f)(1)(A), the judicial officer shall hold a hearing on the question of detention upon the motion of the government in a case that involves a crime of violence.

Title 18 United States Code Section 3142(e)(3)(E) creates a rebuttable presumption when a defendant commits an enumerated crime against a minor, as in this case, that the defendant constitutes a danger to the community, and that no pretrial release condition or combination of conditions may be imposed to assure the safety of any other person and the community. This

---

[5] In the interview conducted at the CAC, A.S. discussed the defendant also making her watch a video of a woman having sex with a dog.

presumptions "operate[s] at a minimum to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985); *United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (observing that the presumptions in § 3142(e) "are rebutted when the defendant meets a burden of production by coming forward with some evidence that he will not flee or endanger the community if released").

In determining whether the defendant has overcome that presumption, the Court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g). Even when the defendant has offered evidence to rebut the presumption of dangerousness, the presumption remains a factor in the court's analysis of the § 3142(g) factors. *See United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1983) ("Use of that word [rebutted] in this context is somewhat misleading because the rebutted presumption is not erased. Instead it remains in the case as an evidentiary finding militating against release, to be weighed along with other evidence relevant to factors listed in § 3142(g)."). As the Sixth Circuit has observed, "[t]he presumption [of dangerousness] remains as a factor because it is not simply an evidentiary tool designed for the courts. Instead, the presumption reflects Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial." *United States v. Stone*, 608 F.3d 939, 945-46 (6th Cir. 2010) ("To rebut the presumption, therefore, a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm.'").

## ANALYSIS

For the reasons that follow, the government submits that that the defendant cannot rebut the presumption that he shall remain detained, as there is no condition or combination of conditions that will reasonably assure the safety of any other person and the community.

### A.   The Nature and Circumstances of the Offense Charged

The defendant in this case is charged with an offense against a minor victim that is statutorily defined as a crime of violence, pursuant to 18 U.S.C. Section 3156, as well as additional acts of sexual abuse against the same minor victim. For nearly a year, the defendant forced the victim to engage in sexual acts with him, and he threatened to hurt her or her family if she disclosed the abuse. The defendant enticed the victim to engage in these acts through sexually-explicit text messages, and he attempted to buy the victim's silence through promises of money and gifts. Worse yet, as the victim's stepfather, who was often entrusted with caring for the victim while her mother was hospitalized, the defendant exploited a position of trust in committing his offenses. Given the blatant and offensive nature of his conduct, there is no condition or combination of conditions to ensure A.S.'s (or any other minor's) safety or the safety of the community.

### B.   The Weight of the Evidence Against the Defendant

As summarized above, the evidence against the defendant is overwhelming, including irrefutable electronic evidence, to include pornographic and explicit photographs of the minor victim that the defendant either took or directed the victim to take and send to him; the defendant's own sexually-explicit words to the victim in text messages, including admissions of the very sexual abuse that A.S. disclosed; and searches for pornography on the defendant's home computer that demonstrate his interest in the specifics of the abuse to which he subjected her—sexual abuse by a stepfather against his stepdaughter. In addition to this electronic evidence, A.S. has provided

clear and specific information regarding at least half a dozen specific instances of abuse, which is only some of the abuse to which the defendant subjected her. Given all of this evidence, this factor also favors the defendant's detention.

C.      <u>**The History and Characteristics of the Defendant**</u>

The defendant has a lengthy criminal history, including 10 convictions and a noteworthy 46 arrests over the last 20-plus years. The defendant has previously been convicted of weapons-related offenses (in 1992 and 1999), a violent offense (attempt burglary in 1992), assaultive conduct (assault with a deadly weapon in 1980, simple assault in 1982, assault and battery in 2004), failures to appear (in 2002 and 2003), fraudulent conduct (invalid use of a credit card with intent to defraud in 1988 and identity fraud in 2002), obstruction of justice (in 2000), and a drug-related offense (in 2000). The number and breadth of the defendant's criminal convictions demonstrate the defendant's dangerousness and inability to abide by release conditions, and counsel in favor of pre-trial detention.

D.      <u>**The Nature and Seriousness of the Danger to Any Person or the Community**</u>

The evidence here establishes that the defendant represents a danger to A.S. in particular, to children, and to the community. The defendant has engaged in blatant criminal conduct in which he repeatedly and violently victimized a child for whose care he was responsible, for his own sexual gratification. These flagrant violations of the law also weigh in favor of detention.

///

///

///

///

///

14

## <u>CONCLUSION</u>

For all of the reasons set forth above, and any other reasons set forth at any hearing on this issue, a consideration of the evidence in this case and the applicable statutory factors compels the conclusion that the defendant should be detained pending trial.

WHEREFORE, the government respectfully requests that the court grant its motion for detention of the defendant.

Respectfully submitted,

JESSIE K. LIU
UNITED STATES ATTORNEY

___/s/_____

Andrea Lynn Hertzfeld
Assistant United States Attorney, D.C. Bar 494059
Jennifer B. Loeb
Assistant United States Attorney, D.C. Bar 996094
U.S. Attorney's Office
555 4th Street, N.W., Room 4823
Washington, D.C. 20530
202-252-7808
Andrea.Hertzfeld@usdoj.gov