UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>JOSEPH SMITH,<br><br>　　　　Defendant. | )<br>)<br>)<br>) Magistrate Case No.: 19-00162 (RMM)<br>)<br>)<br>)<br>) |

**DETENTION MEMORANDUM**

　　This matter comes before the Court on a motion by the United States requesting that Defendant Joseph Smith ("Mr. Smith") be detained pending trial.  Mr. Smith has been charged by Criminal Complaint with one count of Production of Child Pornography, in violation of Title 18 United States Code Section 2251(a), one count of Possession of Child Pornography, in violation of Title 18 United States Code Section 2252(a)(4)(B), one count of Enticing a Minor, in violation of Title 18 United States Code Section 2422(b), and one count of First Degree Child Sexual Abuse with Aggravating Circumstances, in violation of District of Columbia Code Sections 3008 and 3020(a)(2).  The undersigned held a detention hearing on June 24, 2019, and concluded that Mr. Smith should be held without bond pending trial.  This memorandum fulfills the Bail Reform Act's requirement that a pretrial detention order "include written findings of fact and a written statement of the reasons for the detention."  18 U.S.C. § 3142(i)(1); *see also United States v. Nwokoro*, 651 F.3d 108, 109 (D.C. Cir. 2011).

**Statutory Basis for Detention Hearing**

　　The United States cited 18 U.S.C. § 3142(f)(1)(A) of the Bail Reform Act to support its request that a hearing be held on pretrial detention.  That provision provides a statutory basis for

the Court to hold a detention hearing in matters involving alleged crimes of violence.  Mr. Smith did not dispute the United States' contention that this statutory provision authorized the Court to hold a detention hearing in this matter.

### **Findings of Fact**

On June 24, 2019, Mr. Smith appeared before the Court for a preliminary hearing.  The United States proceeded by calling Special Agent Laura Calvillo of the Federal Bureau of Investigation (FBI) as a witness.  Agent Calvillo works on the Child Exploitation and Human Trafficking Task Force for the FBI, and is assigned to the case against Mr. Smith.  Among other evidence, Agent Calvillo reviewed the case file, police reports from the Metropolitan Police Department (MPD), and the forensic interviews of the complaining witness and the complaining witness's sibling.  Agent Calvillo also spoke with Detective Sullivan from the MPD regarding the case.  Detective Sullivan was the affiant for the Statement of Offense sworn to in support of the Criminal Complaint against Mr. Smith.  S*ee* Criminal Compl., ECF No. 1.  Agent Calvillo testified that she had personally reviewed the information Detective Sullivan included in his Affidavit, and she did not notice any inconsistent information in it.  The undersigned ruled that Agent Calvillo could adopt into her testimony the facts from Detective Sullivan's Affidavit.  After considering Agent Calvillo's testimony, the facts from Detective Sullivan's Affidavit, and the arguments made by the Government and Defense, the Court determined that the record established probable cause that the charged offenses were committed, and that Mr. Smith committed them.

The Court held a detention hearing in this matter immediately following the preliminary hearing.  Having considered the evidence presented during the Preliminary hearing, including the facts from Detective Sullivan's Affidavit and Agent Calvillo's testimony, the information

provided by the Pretrial Services Agency (ECF No. 2), and the Government's Memorandum in Support of Pretrial Detention of Defendant Joseph Smith (ECF No. 5), the Court makes the following findings of fact.

Between in or about May of 2016 and April of 2017, Mr. Smith engaged in ongoing, repeated sexual abuse of his minor step-daughter, A.S.  During the same period, Mr. Smith sent sexually explicit text messages to A.S. enticing and coercing her to engage in the conduct that constituted the sexual abuse.  In addition, on at least one occasion, Mr. Smith used A.S. to produce a sexually explicit depiction of A.S.'s genitalia by photographing her using his cellular telephone.  On multiple occasions during the course of the abuse, Mr. Smith also photographed A.S. in the nude, often surreptitiously, and instructed A.S. to take sexually explicit images of herself to provide to Mr. Smith.  During the period of abuse, A.S. resided in the same home with Mr. Smith, her mother, and her younger sister.

A.S. reported the abuse to law enforcement on April 19, 2017.  That day, A.S., her mother (herein "Witness 1"), and A.S.'s younger sister (herein "Witness 2") went to the First District substation of the Metropolitan Police Department and reported that Mr. Smith had been forcing A.S. to perform oral sex on him for approximately one year.  A.S. also reported that Mr. Smith had been performing oral sex on her.  The sexual abuse began in May of 2016, when A.S. was twelve years old.  Witness 1 stated that the mother of A.S.'s friend told Witness 1 that A.S. had  disclosed the abuse to a friend..  Witness 1 then spoke with A.S., and A.S. allegedly told Witness 1 that Mr. Smith told A.S. that on her 14th birthday, he would penetrate her vagina and anus with his penis.  A.S. told Witness 1 she had not earlier disclosed Mr. Smith's abuse out of fear.  That evening, A.S. was forensically interviewed at the Children's Advocacy Center ("CAC").

In describing the abuse, A.S. disclosed that Mr. Smith forced his penis in and out of her mouth as she resisted and cried. A.S. further disclosed that during the 2016-17 school year, Mr. Smith began "connecting his mouth to [her] vagina." A.S. disclosed that the last time Mr. Smith sexually abused her was in March of 2017. She stated that Witness 1 walked in the room while the abuse was occurring, and Mr. Smith jumped up in the bed as if he was doing something else. A.S. adjusted herself and stated she was hot to explain why she did not have any clothing on her lower body. A.S. said she was afraid to disclose the abuse to Witness 1 at that time.

In addition to the physical abuse, evidence indicates Mr. Smith sent numerous explicit text messages to A.S.'s cellular phone. Those text messages included messages sent after Mr. Smith had sexually abused A.S., in which Mr. Smith described the "next schedule," *i.e.*, his expectations of their next sexual encounter. In one text, Mr. Smith allegedly told A.S. that for her 14th birthday he would put his penis in her vagina and her anus. A.S. stated that Mr. Smith deleted the messages from his own phone and would also take her phone from her and delete the text messages he had sent her.

A.S. also reported that Mr. Smith would take pictures of her nude body with his cellular phone when she was in the bathtub in Mr. Smith's residence in D.C. In addition, on several occasions, Mr. Smith instructed A.S. to take nude pictures of herself to send to him, and A.S. sometimes complied.

On April 21, 2017, pursuant to a warrant issued by the Superior Court of the District of Columbia, a search was conducted at Mr. Smith's residence. Law enforcement seized multiple electronic devices belonging to Mr. Smith, including a PC computer and Motorola cellular phone. Between April 27 and May 10, 2017, a preliminary forensic examination of the seized devices was conducted by the Department of Forensic Sciences Digital Evidence Unit (herein

"DFS").[1]  The computer revealed it was associated with a username of "joseph" and a full name of "Joseph Smith."  Numerous recent internet searches had been conducted on the computer for pornographic material.  These searches included queries for sexual intercourse between a step-father and step-daughter, anal sex—including with a teenager—and questions regarding whether a pregnancy could result from anal sex.  DFS also conducted a rudimentary, preliminary extraction of the Motorola cellular phone that revealed numerous text messaging exchanges between Mr. Smith and A.S. during the relevant time frame, although none were of the character described by A.S. in the forensic interview.  At the time of the search, the DFS did not have software available to conduct a more complete physical extraction of the device, and accordingly could not retrieve deleted messages and data from Mr. Smith's Motorola phone.

On May 10, 2019, Mr. Smith was arrested at the First District Police Substation at 500 E Street, S.E., and charged in the Superior Court for the District of Columbia with one count of First Degree Sexual Abuse and four counts of Misdemeanor Sexual Abuse**.**  At the time of his arrest, Mr. Smith had on his person an Apple iPhone 6S+ (herein "iPhone"), which police officers seized incident to arrest and logged as evidence.  The Superior Court for the District of Columbia issued a search warrant for the iPhone, and DFS completed a preliminary forensic review of that device.

Given the limitations of DFS's first preliminary forensic examination of Mr. Smith's Motorola cellular phone, in May 2019, DFS conducted a second, more complete forensic examination of Mr. Smith's Motorola phone pursuant to a new warrant obtained from the

---

[1] In addition, A.S.'s iPhone was seized from Mr. Smith's residence.  A.S. provided the passcode to the device.  DFS attempted to access the iPhone but for unknown reasons, did not use the passcode provided by A.S., and therefore the iPhone was not forensically analyzed at that time.

Superior Court for the District of Columbia.  Among the evidence recovered were two images depicting A.S.  The first was an image depicting A.S. holding up her shirt and displaying her breasts toward the camera.  The image was taken in the bathroom at Mr. Smith's residence, in which A.S. had resided with Mr. Smith.  A second image depicted A.S.'s vaginal and anal area, and was taken from a vantage point behind A.S.  The background depicted the same shower curtain and surroundings as the first image.  At a follow-up interview of A.S. conducted on June 11, 2019, A.S. identified herself in the image depicting her genitalia and described the circumstances in which the photo was taken.  Specifically, A.S. stated Mr. Smith had entered the bathroom of their shared residence, instructed her to bend over, and pushed her on her back with his hand to make her do so.  A.S. said while she stood bent over with her hands on the toilet, Mr. Smith used his cellular phone to take the photograph depicting her vaginal and anal area.  A.S. also identified herself in the image displaying her breasts and stated that Mr. Smith entered the bathroom while she was in there, handed her own cellular phone to her, and then threatened her to coerce her to take an image of her breasts and send it to him, which she did.

      DFS also conducted a more complete forensic extraction of A.S.'s iPhone in May 2019, using her passcode to access the phone's contents.  DFS recovered from the iPhone numerous text messaging exchanges between A.S. and Mr. Smith that had been deleted, but were nonetheless forensically extracted.  On April 10, 2017, A.S. and Mr. Smith engaged in a text message exchange in which Mr. Smith expressed a desire to lick A.S.'s breasts and threatened to start anally penetrating her with his penis.  The forensic extraction also yielded other messages, dated between November 2016 and March 2017, including messages from January and March 2017 in which the sender propositioned A.S. to place his penis in her mouth, expressed an interest in performing oral sex on A.S., and offered to let A.S. "[h]ave anything you want" if she

allowed him to anally penetrate her.  Although the extraction report identifies A.S. as the recipient of those messages but does not identify the sender, during a June 11, 2019 interview A.S. subsequently identified those messages as having been sent by Mr. Smith.[2]

During the June 11, 2019 interview, A.S. was asked additional questions not addressed during her CAC interview.  In response to this lengthier, more detailed questioning, A.S. revealed additional details about the sexual abuse she suffered.  For example, A.S. recounted an incident in which Mr. Smith drove her in a rented U-Haul van to a pet store in Washington, D.C., drove the van to a dark vacant area in the vicinity of Banneker High School, parked the van, pulled A.S. into the back, pushed her to her knees, and forced her to suck his penis.  A.S. also stated that on at least one occasion, Mr. Smith forced her to watch a video of pornography on his computer. The video he made her watch depicted vaginal sex, and A.S. recalled it to be titled something akin to "stepdaughter and stepfather sex."  Mr. Smith stopped A.S. when she tried to leave the room because she did not want to watch the video, and he told her that it was normal for stepfathers to have sex with their stepdaughters.

## **Legal Standard**

"In our society, liberty is the norm and detention prior to trial or without trial is the carefully limited exception."  *United States v. Salerno*, 481 U.S. 739, 755 (1987).  The Bail Reform Act of 1984, 18 U.S.C. § 3141, *et seq.*, articulates the circumstances that trigger that exception.  Specifically, provisions of the Bail Reform Act authorize a judicial officer to order the detention of a defendant before trial if the judicial officer determines after a hearing that "no

---

[2] A.S.'s responses to these messages, if any, were not recovered.

condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

A finding that a defendant poses a danger to the community, or that there is a serious risk the defendant will flee, provides an adequate basis to order pretrial detention. *See Salerno*, 481 U.S. at 755; *United States v. Lee*, 195 F. Supp. 3d 120, 124 (D.D.C. 2016); *United States v. Henry*, 935 F. Supp. 24, 25 (D.D.C. 1996). A detention decision based upon the defendant's dangerousness to the community must be supported by "clear and convincing evidence." 18 U.S.C. § 3142(f); *see United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996). In contrast, a detention decision based upon a finding that no set of conditions will reasonably assure the defendant's appearance in court "need only be supported by a 'preponderance of the evidence.'" *United States v. Simpkins*, 826 F.2d 94, 96 (D.C. Cir. 1987) (quoting *United States v. Vortis*, 785 F.2d 327, 329 (D.C. Cir. 1986)); *see United States v. Xulam*, 84 F.3d 441, 442 (D.C. Cir. 1996); *see also United States v. Anderson*, 382 F. Supp. 2d 13, 14 (D.D.C. 2005).

The Bail Reform Act directs judges to consider four factors in determining whether any conditions of release will reasonably assure a defendant's future presence in court or assure the safety of any other person and the community: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or to the community posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *see also Xulam*, 84 F.3d at 442. The court must consider the available information pertaining to all four factors, even if the parties' arguments do not address each factor. *See* 18 U.S.C. § 3142(g); *see also United States v. Hassanshahi*, 989 F. Supp. 2d 110, 117 (D.D.C. 2013).

When there is probable cause to believe a defendant committed certain enumerated offenses, a rebuttable presumption provides "that no condition or combination of conditions will reasonably assure the appearance of the [defendant] as required and the safety of the community." 18 U.S.C. § 3142(e)(3). Once triggered, "the presumption operate[s] *at a minimum* to impose a burden of production on the defendant to offer some credible evidence contrary to the statutory presumption." *United States v. Alatishe*, 768 F.2d 364, 371 (D.C. Cir. 1985) (emphasis in original). Furthermore, "even if the defendant offers evidence to counter the presumption, the presumption does not disappear entirely." *United States v. Hunt*, 240 F. Supp. 3d 128, 132 (D.D.C. 2017). Instead, the "presumption is incorporated into the other factors considered by [the] Court in determining whether to grant a conditional release and is given substantial weight." *United States v. Cherry*, 221 F. Supp. 3d 26, 32 (D.D.C. 2016) (quoting *United States v. Ali*, 793 F. Supp. 2d 386, 391 (D.D.C. 2011)); *see also United States v. Hite*, 76 F. Supp. 3d 33, 42-43 (D.D.C. 2014) (detaining the defendant although the defendant had presented enough evidence to rebut a presumption of detention).

## Discussion

The United States sought Mr. Smith's detention pursuant to 18 U.S.C. § 3142(f)(1)(A), because he is charged with crimes of violence. Two of the four charges against Mr. Smith, the alleged violations of 18 U.S.C. §§ 2251(a) and 2422(b), trigger the presumption of detention if the Court finds probable cause he committed the offenses. As noted above, the Court conducted a preliminary hearing and found probable cause to believe that Mr. Smith committed the charged offenses; therefore the rebuttable presumption was triggered. After considering this rebuttable presumption of detention and weighing the statutory factors, the Court concludes there are no

release conditions that would reasonably assure the safety of the community if Mr. Smith were released.  Therefore, pretrial detention is appropriate.

  The Court's analysis is guided by the rebuttable presumption and the four factors set forth in Section 3142(g) of the Bail Reform Act.  *See United States v. Little*, 235 F. Supp. 3d 272, 277–78 (D.D.C. 2017); *United States v. Muschetta*, 118 F. Supp. 3d 340, 343–44 (D.D.C. 2015).  The Court considered the information from the Pretrial Services Report (ECF No. 2), the Government's Memorandum in Support of Pretrial Detention of Defendant Joseph Smith (ECF No. 4), the Statement of Offense in support of the Complaint (ECF No. 1), the testimony from the Preliminary Hearing, and the arguments presented by counsel.  Having applied the relevant statutory provisions to that record, the Court concludes that Mr. Smith has not overcome the rebuttable presumption, and that the statutory factors weigh in favor of pretrial detention.  Therefore, he should be held without bond pending trial.

  First, Mr. Smith has not overcome the presumption of detention.  To rebut the presumption, Mr. Smith must produce "'at least some evidence' or basis to conclude that the case falls 'outside "the congressional paradigm" giving rise to the presumption'" of pretrial detention.  *United States v. Taylor*, 289 F. Supp. 3d 55, 63 (D.D.C. 2018) (quoting *United States v. Stone*, 608 F.3d 939, 945–46 (6th Cir. 2010)).  Mr. Smith emphasized the lapse of time between the alleged offenses and his arrest, noting that the authorities did not prosecute him for two years.  Mr. Smith also noted that although he has a criminal record, he has never been charged with an offense similar to those charged in this case, and his last charge was from over 16 years ago.  Mr. Smith also noted that he has previously complied with release conditions—as demonstrated by the Pretrial Services Report indicating no history of supervision violations.

Those arguments are insufficient to overcome the presumption of detention given the nature of the charges and the danger to the alleged victim of sexual abuse.

Although a presumption of detention applies, the Court still must evaluate the four factors codified at Section 3142(g) of the Bail Reform Act. *See Little*, 235 F. Supp. 3d at 277–78. Those factors weigh in favor of pretrial detention for the reasons stated below.

The first factor, the nature and circumstances of the offense, strongly favors pretrial detention. Mr. Smith is charged with repeatedly sexually abusing a minor who resided in his home—his step-daughter—over the course of at least one year. Mr. Smith is also accused of coercing A.S. into making sexually explicit photographs, and engaging in explicit text message conversations with A.S. in which he discussed sexually abusing her. The offense is particularly serious given Mr. Smith's status as the alleged victim's step-father, *i.e.* a person entrusted with her care. Mr. Smith faces a lengthy sentence if he is convicted, and two of the charged offenses trigger the presumption of detention. Therefore, this factor weighs strongly in favor of pretrial detention.

The second factor, the weight of the evidence, also favors detention. The Government proffered strong evidence against Mr. Smith, including the detailed testimony of A.S., text messages documenting sexual abuse as described by A.S., and two photographs from a phone associated with Mr. Smith that contained what appeared to be explicit pictures of A.S. The defense argued that the evidence linking the contents of the phones to Mr. Smith was not strong, and suggested that someone else may have used the phone. However, A.S. identified Mr. Smith as the individual who took the explicit photographs that were recovered from the phone and as the person who sent the explicit text messages. Consequently, the defense's arguments are not

strong enough to overcome the weight of the evidence against Mr. Smith, and this second factor also favors pretrial detention.

      Mr. Smith's history and characteristics, which are analyzed pursuant to the third factor, weigh neither towards detention nor release, but are instead a neutral factor in the Court's analysis.  The Court recognizes that Mr. Smith has 10 prior convictions, but also notes the most recent one is from about 15 years ago.  Significantly, none of Mr. Smith's prior convictions were for offenses similar to those charged in this case.  The Government asserts that Mr. Smith removed or tampered with a GPS tracking device while on release in a D.C. Superior Court case, but the defense contests that claim.  Mr. Smith no longer lives with the alleged victim, and asserts that no children reside in his home.  He has resided in the Washington, D.C. area for approximately forty years, and thus has substantial ties to the community.  As the positive aspects of Mr. Smith's history and characteristics largely offset the negative, this factor is neutral.

      Finally, the fourth factor, the nature and seriousness of the danger to the community if Mr. Smith were to be released, favors detention.  In this case the alleged victim stated that Mr. Smith repeatedly sexually abused her over a period of time commencing when she was only twelve years old.  The charged offenses each involve the sexual exploitation of a minor.  This suggests Mr. Smith presents a danger to not only the alleged victim, but also to any other minor he may come into contact with.  The Court is not persuaded by the defense's argument that Mr. Smith must not have been deemed dangerous by law enforcement by virtue of the fact that he was not arrested at the time of the initial complaint.  Rather, the Court finds the later recovery of additional evidence explains the time lapse between the complaint and arrest.

The release conditions that Mr. Smith proposed would not adequately assure the safety of any other person and the community.  Specifically, Mr. Smith requested release on strict supervision terms, such as home detention, and noted that no children reside in his home. However, as the alleged abuse occurred in his home and there is no practical way to ensure that Mr. Smith would have no contact with minors if released to home detention, those proposed conditions would not adequately mitigate the risk he presents.

### Conclusion

For the foregoing reasons, the Court concludes that the United States has met its burden in showing by clear and convincing evidence that pretrial detention is warranted because Mr. Smith presents a danger to the community.  Having reviewed and weighed all the evidence and the factors set forth in 18 U.S.C. § 3142(g), and after considering all of the less restrictive alternatives to pretrial detention, this Court concludes no condition or combination of conditions would reasonably assure the safety of the community if Mr. Smith were released.  Therefore, the Court GRANTS the United States' motion for detention without bond.

Dated: July 8, 2019

ROBIN M. MERIWEATHER
UNITED STATES MAGISTRATE JUDGE